**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARY LINTON,

        Plaintiff,

v.
        Case No. 10-12602
        Honorable Denise Page Hood

CITIZENS INSURANCE COMPANY
OF AMERICA, a division of the
HANOVER INSURANCE GROUP,
a foreign corporation,

        Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING THIS CASE**

**I.    INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment **[Docket No. 20, filed June 22, 2011]** and Defendant's Motion for Summary Judgment **[Docket No. 25, filed August 9, 2011]**. On August 29, 2011, Plaintiff and Defendant filed a stipulation and order dismissing with prejudice the Americans with Disabilities Claim from Count I, Count III (Retaliatory Discharge/Public Policy), and Count IV (Michigan Whistleblowers' Protection Act). The remaining claims are Count I (Michigan Persons with Disabilities Civil Rights Act) and Count II (Family Medical Leave Act).

**II.    BACKGROUND**

Plaintiff, Mary Linton, began working with Defendant, Citizens Insurance Company of America, in March 1997 as a temporary worker [Amend. Compl. ¶ 9; Pl.'s Dep. at 45]. She was

hired full time in February 1998 [Pl.'s Dep. at 64].

In April 2000, Plaintiff was given a verbal warning for "unprofessional, inappropriate behavior that was negative and disruptive to the team" [Def.'s Mot. Summ. J. Ex. 6; Pl.'s Dep. at 80-81; Shield's Aff., Ex. 2 ¶ 7a]. Plaintiff's 2001-2002 performance review indicated that overall Plaintiff met most expectations [Def.'s Mot. Summ. J. Ex. 7-8; Shield's Aff., Ex. 2 ¶7b-c]. In October 2002, Plaintiff underwent a hysterectomy [Pl. Dep. at 250]. She was gone from work for 11 weeks [Amend. Compl. ¶ 12].

In January 2003, Plaintiff received a performance appraisal that covered the period of January 2002 until August 2002 which indicated several areas that required performance improvement, including the timeliness and quality of work and attitude [Def.'s Mot. Summ. J. Ex. 9; Shield's Aff., Ex. 2 ¶ 7d]. Plaintiff contends that her desk was left unattended during her medical leave, which caused work to accumulate [Pl.'s Dep. at 250-51].[1] In February 2004, Plaintiff received a performance review that indicated that she "met expectations" [Pl.'s Mot. Summ. J. Ex. B; Def.'s Ex. 10].

In July 2004, Plaintiff had a blood clot in her leg and was off work for six weeks [Amend. Compl. ¶ 14]. In November 2004, Plaintiff underwent bariatric surgery and returned to work before the end of 2004 [Amend. Compl. ¶ 15]. Plaintiff alleges that her desk was also left unattended during this medical leave, which caused work to accumulate [Pl.'s Dep. at 252].[2] In January 2005, Plaintiff's performance appraisal indicated that she needed to improve [Pl.'s Mot. Summ. J., Ex. C; Def.'s Mot. Summ. J., Ex. 11; Shield's Aff., Ex. 2 ¶ 7f]. In September 2005, Plaintiff's performance appraisal noted that she met expectations for that reporting period [Pl.'s Mot. Summ. J., Ex. D and Ex. E]. A 2006 performance appraisal indicated that Plaintiff

---

[1] This testimony was elicited by leading questions, to which Defendant properly objected.
[2] This testimony was elicited by leading questions, to which Defendant properly objected.

successfully achieved performance standards [Pl.'s Mot. Summ. J., Ex. F].

On October 2006, Plaintiff reported to her supervisor that she required surgery for a double hernia.[3] On October 10, 2006, Plaintiff was placed on a performance improvement plan ("PIP") by her manager Julia Davis [Def.'s Mot. Summ. J. Ex 12]. In 2007, Plaintiff's mid-year performance review indicated that successfully achieved performance standards with a score of 3 out of 5 (5 being the lowest score) [Pl.'s Mot. Summ. J. Ex. G]. In June 2007, Plaintiff underwent surgery for a hernia and abdominoplasty and was out of work for six weeks [Amend. Compl. ¶ 19].

On March 4, 2008, Plaintiff's performance review, completed by new manager Shelly Garcia, provided that Plaintiff met some performance standards [Def.'s Mot. Summ. J. Ex 13].[4] Plaintiff was placed on a second PIP on July 1, 2008 [Def.'s Ex. 14]. In July 2008, Plaintiff underwent an emergency bowel obstruction surgery and returned to work within 12 weeks [Amend. Compl. ¶¶ 21-22].[5] During her leave, Defendants found several errors in Plaintiff's work [Aff. Garcia, Def.'s Mot. Summ. J., Ex. 4 at ¶ 7]. On October 1, 2008, Plaintiff received a performance review that reported that she did not meet performance standards or a rating of 5 out of 5 [Pl.'s Mot. Summ. J. Ex H; Def.'s Mot. Summ. J. Ex. 17]. Plaintiff then met with supervisor, Shelley Garcia, regularly to discuss Plaintiff's work [Pl.'s Dep. 117-18, 129].

Plaintiff alleges that she informed Defendant in June 2009 that she would need additional

---

[3] Plaintiff alleges that she reported to her supervisor in October 2006 that she had a double hernia and would require surgery [Pl.'s Dep. at 253]. There is no indication of when in October 2006 Plaintiff informed her supervisor that she would have surgery for a double hernia.

[4] In her Complaint, Plaintiff alleges that she received a negative performance review in January 2008 after being told that she was doing a "terrific job" [Compl. ¶ 20]. However, Plaintiff does not provide this performance review nor mentions it in her brief. She does provide an early 2008 review. She appears to mischaracterize this performance review in her brief. She indicates that she met performance standards, but the actual performance review and deposition testimony state that Plaintiff only met some performance standards.

[5] It appears that this leave took place after Plaintiff received her second PIP.

3

surgery [Pl.'s Dep. 260].[6] Plaintiff testified during her deposition that she showed supervisor Shelly Garcia a wound that had opened on Plaintiff's stomach [Pl.'s Dep. at 101-03]. Plaintiff was excused to go to the doctor's office, but then flew to Florida for vacation that afternoon [Pl.'s Dep. at 101-03]. On August 17, 2009, Plaintiff was placed on a third PIP [Pl.'s Mot. Summ. J. Ex. I; Def.'s Mot. Summ. J. Ex. 18]. The PIP indicated that "[s]ignificant improvement will need to be made in all areas… of performance as a PIP Adjuster" [Pl.'s Mot. Summ. J. Ex. I; Def.'s Mot. Summ. J. Ex. 18]. On September 10, 2009, Defendant gave Plaintiff a written extension of the August 17th PIP [Def.'s Mot. Summ. J. Ex. 19]. Plaintiff was terminated in October 2009 for "poor performance" [Amend. Compl. ¶ 24; Garcia Aff., Ex. 4 ¶ 13].

## III.   STANDARD OF REVIEW

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (U.S. 1986). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). The Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). To create a genuine issue of material fact, the nonmovant

---

[6] Defendant argues that Plaintiff misstates the facts here. Defendant provides Plaintiff's medical treatment notes from June 19, 2009 that indicate that surgery was not part of the treatment plan at that time. Plaintiff received a letter on October 1, 2009 stating that she would have surgery on October 15, 2009 [Def.'s Resp. Pl.'s Mot. Summ. J. Ex C].

4

must do more than present "some evidence" of a disputed fact.  Any dispute as to a material fact must be established by affidavits or other documentary evidence.  Fed. R. Civ. P. 56(c).  "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).  Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  *Scott*, 550 U.S. at 380.

## IV. ANALYSIS

### A. Michigan Persons with Disabilities Civil Rights Act

Plaintiff claims that she is entitled to relief under the Michigan Persons with Disabilities Civil Rights Act ("CRA") because Defendant discharged her in retaliation for her disability status.  Defendant argues that Plaintiff could not make a prima facie case. Specifically, Plaintiff is not a qualified individual with a disability under the CRA.

The CRA protects a qualified individual with a disability from discrimination. *Peden v. City of Detroit,* 680 N.W.2d 857, 863 (Mich. 2004). The purpose of the CRA is to "mandate 'the employment of the handicapped to the fullest extent reasonably possible.'" *Id*. To establish a prima facie case under the CRA, a plaintiff must demonstrate that 1) he has a disability as defined by the CRA, 2) the disability is unrelated to the performance of the job duties, and 3) he was discriminated in a way described in the CRA.[7] *Lown v. JJ Eaton Place*, 598 N.W.2d 633,

---

[7] Michigan Complied Laws § 37.1202 prohibits an employer from engaging in the following activities towards a qualified individual with a disability: 1) fail or refuse to hire or promote; 2) discharge or otherwise discriminate against with respect to compensation, terms, or privileges of employment; 3) limit, segregate or classify an employee or applicant in  a way that is adverse to

636 (Mich. Ct. App. 1999). The CRA defines disability as a "determinable physical or mental characteristic" that "substantially limits" one or more "major life activities" and that are unrelated to the plaintiff's ability to perform the job duties, or "regarded as having a determinable physical or mental characteristic." MICH. COMP. LAWS § 37.1103(d). In determining whether the impairment affects a major life activity, Michigan courts consider, with guidance from federal analysis of the Americans with Disabilities Act, the nature and severity of the impairment, its duration or expected duration, and its permanent or long-term effect. *Id.* at 637. "Intermittent, episodic impairments are generally not disabilities." *Jones v. Beacon Harbor Homes, Inc.*, 2011 WL 711144, *2 (Mich. App. 2011) (citing *Lowen*, 598 N.W.2d at 639). If the plaintiff is able to present a prima facie case of discrimination, the burden shifts to the defendant. *Peden*, 680 N.W.2d at 864.

  First, it appears that Plaintiff argues in her briefs that she was retaliated against for taking medical leave. However, Plaintiff does not allege in her Complaint that she was retaliated against for engaging in a protected activity. In fact, Plaintiff cites the retaliation provision under Michigan's Elliot-Larsen Civil Rights Act, which does not include those with disabilities as a protected class. Second, Defendant appears to make an argument that Plaintiff does not demonstrate a prima facie case for disparate treatment and uses federal analysis under the American with Disabilities Act for guidance. It appears that neither is on point. Plaintiff's Amended Complaint alleges that she was discharged or otherwise discriminated against on the basis of disability. The Court should proceed based on an analysis of Plaintiff's CRA claim as outlined in her Amended Complaint.

  It appears that Plaintiff cannot make out of prima facie case of discrimination under the

---

that employee; 4) require an individual to submit to genetic testing or provide genetic information as condition of employment.

CRA. In her Complaint, Plaintiff does not indicate the physical or mental impairment has caused her to be disabled. She notes that she suffered from multiple medical maladies as a result of bariatric surgery and a hysterectomy. She also notes in her Amended Complaint that she had undergone surgery for a hysterectomy, a blood clot, a hernia, and an abdominoplasty. These conditions were temporary and appear to have been resolved by surgery. *See Chmielewski v. Xermac, Inc.*, 580 N.W.2d 817, 824 (Mich. 1998) ("we reject the plaintiff's argument that the legislative history of the [CRA] supports the view that an individual's handicapped status should be determined without regard to his actual condition with mitigating measures"). Plaintiff admitted during her deposition, that these conditions were resolved through surgery [Pl.'s Dep. 177-80]. Even assuming that Plaintiff does have a condition that was not too temporary in nature, Plaintiff has not provided any evidence that her physical impairments substantially limited a major life activity. Plaintiff argues for the first time in her response to Defendant's motion to dismiss that complications from Plaintiff's 2007 surgery affected Plaintiff's ability to walk, sleep, bath, cook, and maintain her home. However, Plaintiff makes this argument without any reference to the record. Furthermore, Plaintiff has not provided any evidence that she was "regarded as" disabled besides from one paragraph allegation in her Complaint. It appears that Plaintiff has not provided sufficient evidence nor created a genuine issue of material fact. The Court dismisses Plaintiff's CRA claim for failure to demonstrate that she is a qualified individual with a disability.

    **B. Family Medical Leave Act**

    Plaintiff next contends that she was illegally terminated for taking leave under the Family Medical Leave Act ("FMLA"). Defendant argues that it had legitimate reasons for terminating Plaintiff's employment.

7

The Sixth Circuit has recognized two theories of recovery under the FMLA: 1) the "entitlement" theory stemming from 29 U.S.C. § 2615(a)(1), and 2) the "discrimination" or "retaliation" theory stemming from 29 U.S.C. § 2615(a)(2). *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008). Under the latter theory, an employer is prohibited from retaliating or discriminating against an employee that takes FMLA leave. *Id.* The plaintiff must demonstrate that 1) she engaged in a protected activity by notifying the defendant of her intent to take leave; 2) she suffered an adverse employment action; and 3) there was a causal connection between the exercise of FMLA rights and the adverse employment action. *Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir. 2006). The critical element is the casual connection between the availing of FMLA rights and the adverse employment action. *Huck v. Greenspan*, 2009 U.S. Dist. LEXIS 7739, 73-74 (E.D. Mich. Jan. 30, 2009). A claim of discrimination or retaliation based on circumstantial evidence is evaluated under *McDonnell Douglass Corp. v. Green.*, 411 U.S. (1973), burden-shifting analysis. *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 315 (6th Cir. 2001). Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for terminating the plaintiff. *McDonnell*, 411 U.S. at 802. The plaintiff must then show by a preponderance of the evidence that the defendant's reasons are merely a pretext for discrimination. *See Skrjanc,* 272 F.3d at 315. "[A] plaintiff may show pretext by demonstrating that the proffered reason (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action." *Huck*, 2009 U.S. Dist. LEXIS 7739. Although temporal proximity may be sufficient to establish a causal connection, it is insufficient to establish pretext. *Id.*

Here, the parties do not appear to dispute that Plaintiff could make out a prima facie case

8

for discrimination. Plaintiff argues that Defendant terminated her for taking leave in October 2009. Plaintiff contends that it was no coincidence that Plaintiff was terminated the very same day that she received a letter from her doctor stating she would need further surgery that month. Defendant argues that Plaintiff was terminated because she was unable to meet their standards of employment.

Plaintiff would not be able to rebut Defendant's reasons as merely pretextual. First, Plaintiff did not inform Defendant that she was taking leave in October 2009. She received the letter but never gave it to her supervisors. Also, Plaintiff was placed on three performance improvement plans. Her performance steadily declined and she admitted on occasion that she needed to improve. Defendant provided evidence that it worked with Plaintiff to assist her in improving her performance ratings. Plaintiff, on the other hand, has not provided any evidence that Defendant's reasons were mere pretext for discrimination. The Court finds that Plaintiff has not raised a genuine issue of material fact and dismisses her FMLA claim.

### V.     CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment **[Docket No. 20, filed June 22, 2011]** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment **[Docket No. 25, filed August 9, 2011]** is **GRANTED**. This case is **DISMISSED WITH PREJUDICE** and deemed **CLOSED**.

                                                            s/Denise Page Hood
                                                            DENISE PAGE HOOD
DATED:  January 31, 2012                                    United States District Judge